We'll hear argument first this morning in Case 09-1279, Federal Communications Commission v. AT&T, Inc. Mr. Yang. Mr. Chief Justice, and may it please the Court, the Court of Appeals has held that FOIA's statutory protection for personal privacy in Exemption 7c extends beyond the privacy of individuals and protects the so-called personal privacy of corporations. That holding is inconsistent with the text of Exemption 7c, FOIA's broader context, and the statute's drafting history, and would lead to anomalous results. The word personal, standing alone, refers to individual, an individual human being. Privacy, standing alone, and even more so in the context of the phrase invasion of privacy, invokes purely individual concepts. And the sum of those terms, that is, the statutory phrase used in FOIA, personal privacy, is greater than the sum of its parts. It's long been well settled that corporations have no personal privacy. Alito, isn't it true that there are contexts in the law in which the word personal is used to refer to a corporation? For example, you could refer to personal jurisdiction over a corporation, couldn't you? There are the term personal is sometimes used as a term of art, and I think personal jurisdiction is one of those. It is the modern, shorter term of art for jurisdiction in personam. And reflects a distinction drawn still in the law between cases brought in personam and cases brought in rem. That, the evolution of that term in the law as a term of art does not reflect what the ordinary meaning of personal is. It's just the same as the term personal property, which also invokes long-established traditional distinctions between property that could be recovered in rem or in real actions versus property that might be recovered in actions in personam. So, and in fact, I think it's important to note that there are, although maybe there are some instances that, I think there's one instance that AT&T cites in its brief. Nothing, it's never cited any use of the term personal to mean corporate or percane to a corporation. And when you add up all of them. What about personal appearance? A personal appearance, I think that supports our position as well. If they're making a personal appearance, it's not something that a corporation does. A corporation is a legal construct. It doesn't exist as a thing that can make an appearance. Alito, what do you think it is? Alito, well, in ordinary speech, the term personal is not the term person is not used to refer to a corporation. That's legalese. But in but since the Administrative Procedure Act defines a person to include a corporation, why is it relevant here or dispositive here to look to the ordinary usage of the term personal as opposed to the way it's used in the law? And in the law, it is sometimes used to refer to a corporation. Well, I think that point actually reinforces our position, because although person is used in certain legal contexts to refer to artificial persons, corporations and the like, personal is not. And personal, as we explain in our brief, is not simply a grammatical alteration and inflection of the term person. This existed in its own right since the late 1300s and has developed meaning that is unique to the term personal. Ginsburg. Ginsburg. Ms. Dean, can we go back first to this? The request came in, and as I understand it, the commission said there are two exemptions, the one for trade secrets, commercial, financial, confidential information, and then there was one with Exemption 7 itself, but as to the employees. Correct. There was an additional exemption, Exemption 5, which protected internal government communications. How does it do the commission unaided by ATT go through the papers and decide what would be embarrassing for an ATT employee as distinguished from the corporation? How does it do that? Yes. Well, I don't think the touchstone is necessarily embarrassment. What the government does following this Court's decision in Reporters Committee is tries to determine whether there is a personal privacy interest about individuals, and that is information that pertains to particular individuals. For instance, in this Court's decision in DOD v. FLRA, the Court explained that although an agency released the names of individuals, it could properly withhold the addresses, the home addresses of those individuals, even though that might be publicly available in phone books, because individuals have at least some small personal privacy interest in that. So what the agency will do is try to identify information pertaining to individuals, and then will conduct, if there is certain information, will conduct, try to conduct a balancing to determine whether there is a public interest in disclosure. That is, whether revealing this would disclose information against the government. Well, in that instance, does the corporation have standing to raise that objection on the employee's behalf? Well, I think the corporation, in a reverse FOIA case, for instance, which is what we have here, where the corporation is alleging that the government's decision-making process is arbitrary and capricious, it has Article III standing to resist the disclosure of documents. If you are using standing kind of like a Fourth Amendment concept standing, I don't think that's the case. Well, as an administrative matter, can the corporation make a FOIA objection on behalf of its employees? It can make an objection on its own behalf, which is to say that the government has not properly gone through the decision-making process. That's the next, that was going to be my next question. So the corporation can raise FOIA on its own behalf. It's actually, let me take a step back. FOIA actions are actions which seek to increase the amount of documents that the government has released pursuant to a FOIA request. We have also reverse FOIA actions, which are actions under the APA and here under the Hobbs Act's review provisions that would give the court of appeals jurisdiction. When there is a reverse FOIA action, the claim is that the agency's final agency action is somehow arbitrary or capricious or not, or contrary to law. And so in this case, the FCC has certain regulations which govern its processing of FOIA requests, and AT&T's claim, as we understand it, is that the FCC did not comply with its regulations and, therefore, its decision was arbitrary and capricious because its regulations required that it consider the personal privacy interests of individuals. And I should note that with respect to Exemption 6 or Exemption 7c, the government itself invokes personal privacy of individuals. That's what we do when we process a FOIA request, because individuals normally don't get any notice that there has been a FOIA request. The government simply processes it and asserts those rights in the sense that they are rights, asserts those interests on behalf of corporations, on behalf of individuals. Going back to the text of the statute, the term privacy, and particularly an invasion of privacy, invokes concepts that go back to Warren and Brandeis' right of privacy, their article which explained that or identified in the law certain human dignitary interests that they gave the label privacy. Roberts. But privacy certainly isn't as limited as you argue person, personal is. Corporations have private property, they have private documents. The concept certainly applies in the corporate context as it does in the individual. I think the term privacy, its ordinary meaning, not the only meaning, but the ordinary and most commonly used meaning, does invoke individual concepts. When corporations or other entities are at issue, normally the more appropriate word would be confidentiality or secrecy. Those concepts invoke. Roberts. You don't have confidential property or secret property. You have private property. True, but it's not privacy. When we are talking about the right of privacy, those — that word, we think, again, going back to Warren and Brandeis, and up through the 50s and 60s when Prosser was elaborating the law of torts in his groundbreaking article on privacy, those concepts apply only to individuals, and particularly when you combine the terms. I mean, the restatement makes it clear, and back to Prosser it was clear, that corporations have no right of personal privacy. So when Congress in 1974 was enacting Exemption 7C, there would have been no basis for it to conclude that the rights that it was conferring through the phrase personal privacy would confer rights beyond individuals to corporations, and by necessary implication if AT&T is correct, foreign governments, State governments, local governments. There's no predicate for those types of entities having personal privacy in the law. Scalia. Scalia. Our cases assert, do they not, that the exceptions to FOIA should be narrowly construed? There are cases that are a number of cases. In certain contexts, this Court has indicated that exceptions are to be narrowly construed. We think that when read in context, those cases, and other cases of this Court, explain that FOIA's exemptions are to be given meaningful reach, because what Congress was trying to do in FOIA, and this is somewhat against our interest in this case, and we explain it more fully in our brief in Milner, which is currently pending to the Court, what Congress was trying to do in FOIA was to establish a general principle of disclosure, but in the exemptions it identified very important interests that warranted an exception from those general rules, and to narrowly construe the exceptions, we think would distort rather than advance congressional purpose in enacting FOIA. So we're going to use the phrase privacy of a person, privacy of any person. Do you make the same argument? Our argument would be a little different, particularly in the context of Exemption 6 and 7c, where the phrase would be an invasion of privacy of any person. We think, particularly when we're talking about invasions of privacy, even though corporation might have a broader definitional meaning, in context, Congress in that case would still, we think, be referring to individuals. But, of course, that's not this case. That would make it a little bit more difficult. We think we would probably still prevail on that reading. But. Ginsburg. What about the Privacy Act? The Privacy Act undoubtedly concerns individuals, human individuals, not artificial beings. But it uses the word individual privacy. Well, it actually uses both phrases. It uses, as we explain in our brief, the phrase personal privacy to explain that that's what the Act was protecting. And then within the operative portions of the Act, it uses individual, but it does so for a very specific reason. Congress was intending to protect a subset of individuals, and it defined the term individual to mean U.S. citizens and lawful permanent residents. So not all individuals would be protected by the Privacy Act. Now, Congress did that, not because, had it used the phrase personal privacy, it would have been extending rights to corporations and foreign governments, but because personal privacy would have been too broad in that it would have, even though it would have been limited to individuals, it would have included a set of individuals that Congress wanted to exclude, that is, everybody who is not a U.S. citizen and a lawful permanent resident. Sotomayor, I'm not sure I understood your response to Justice Scalia. If there is ambiguity, if a term can be given two meanings, and it's not clear, and I know you're challenging the clarity question here, I thought that Congress's intent to have full disclosure would necessarily mean that where there's ambiguity as to the meaning of an exception, then we should choose the narrowest meaning. Well, I think we disagree, and I think this is why. No legislation pursues its primary goal at all costs. And the FOIA exceptions that are at issue here protect very important values that Congress deemed to warrant exception from the rule. And so if the Court were to put a thumb on one scale of that balance that Congress has tried to strike, after using all the normal tools of construction, we think that that would distort rather than advance the intent of the rule. Scalia, I don't understand that. We're not putting a thumb on the scale. Taking account of the fact that Congress has many objectives in any legislation and that the limitations are as important as the substantive end, nonetheless, when having applied all of that, you end up with, gee, I don't know, it's ambiguous. You say even in that situation we don't apply the rule that? Well, if you were to get, after using all the normal tools that the Court does, and you're on a point of putting it. That's what ambiguity means. It means, you know, when you're in a situation where there's ambiguity, it's ambiguous. That's usually a very rare instance that you're exactly at equal poise, and we certainly aren't relying on narrow construction in this case. Okay. The government wants to abandon the principle that we've set forth in our cases. Well, we think that. Exceptions to FOIA are to be narrowly construed. The government does not support that. We do not embrace that principle. Even though we did. I mean, you. Well, we think that those cases, there are two lines of this Court's decisions. Sometimes the Court explains that exceptions are narrowly construed, and sometimes the Court explains that its decision have given, its decisions have given the exceptions practical reach in order to strike the appropriate balance that Congress has tried to strike in FOIA. Now, let me just say, narrow construction, to the extent the Court would want to reaffirm it here, we're not advancing that. It would only help the government's position. But your argument is based on a case that will come before us. So, but in this case, it's to your interest to say, yes, that has been, that has been stated in this Court's precedent, that FOIA exceptions are to be narrowly construed. Well, the government has broader interests beyond a single case, and we think that, again, we're not embracing strict construction in this case. But again, that would only help the government's position if you were to disagree. I'm not going to help the government's position if the government doesn't want to be helped. I mean, I'm happy to leave you where you've put yourself. And we accept that in this case, and we think that the language of the text, particularly when read in context, in light of the statutory history, and particularly when you take a look at what's gone on since 1974. I mean, in the more than 35 years since, there has been uniform agreement that Exemption 6 and 7c apply only to individuals. I suppose, I suppose families have rights of personal privacy, don't they? Well, in certain contexts, family members, as this Court decided in Favish, can have a right to personal privacy. But the Court in Favish recognized that that was a very, you know, significant departure from the prior understanding that the right of personal privacy in FOIA protects information about the individual, him or herself, and recognized that there was another strain of personal privacy which, from longstanding traditions in terms of within our society, the Court could draw on in saying that personal privacy should also protect, at least in the context of decimation. So in some context, personal privacy does go beyond the individual? No, still, it is individuals. I mean, those are individual members of the family. Aggregations of individuals. Well, no, I think it's an individual member of the family has a personal privacy interest by virtue of the relationship to the decedent in Favish. Let me go back. I think I would be remiss if I didn't remark upon this Court's decision. Scalia. Excuse me. To go back to the Chief's question, you do not deny that the individuals who form the corporation, the officers and the employees, are protected by the right of personal privacy, and, indeed, you will edit any FOIA responses to say that the right is to protect those individuals, even though there are many of them, right? Correct. But as individuals, not as the corporation. As individuals, because the information pertains to them. Now, going to the American Express case, which we explained in our reply, I think that is fatal to the proposition that the proposition of AT&T that there is a grammatical imperative that adjectives take the meaning of a related noun. In American Express, the Court construed the Truth in Lending Act, which includes a definition of person to include, for instance, corporations. It then went on to construe a term, consumer, which concerns transactions primarily for personal, family, household, or at the time agricultural purposes. The Court explained that a transaction, the transaction there was conducted for a corporation's business purposes, that it could not, there was, it did not fall within any of the purposes specified, and that was a quote, in the definition of consumer. That is, it did not concern personal purposes. We think that's fatal. The Court, in fact, said that was the only possible conclusion and that there was no other possible interpretation of the statutory phrase. After repeating the enumeration of those four factors three times and then on the very next page saying a corporate, a transaction for corporate business purposes could not be, fit within that definition. Finally, I would like to remark upon the anomalies that this Court would set us forth upon if it were to decide that corporations have personal privacy. At least in the context of individuals, there is an established body of law and societal understanding of what a person, an individual might have a personal privacy interest in. But if we expand personal to include corporations, foreign governments, State governments, local governments, defining what would be personal privacy of those institutions would require an extraordinary exercise of simple, simple policy judgment on the part of the agencies first and then the Court. And this Court in Favish was careful to explain that that type of decision-making would be improper in that appropriate guides to limit and make objective a court and agency's decision-making is required. Congress provided no benchmarks, never addressed corporate, foreign governments or any other nonhuman entity in the context of personal privacy. And, again, for 36 years, there has been uniform agreement that personal privacy applies in this context only to corporations. Sotomayor, your first question. Sotomayor, if an individual has been an individual, a human being, has been investigated by the FBI, and a FOIA request is made for records related to that investigation, would the name of the individual not be turned over? Well, if someone is asking for an investigation of Tony Yang, our — I don't — I can't say definitively, but I think I can probably answer this, that even answering the question of whether there is a responsive record answers the question. So I— Sotomayor, that's the point. So really your adversary is saying that the same harm that occurs to an individual — putting aside the difficulty of defining privacy more broadly — that the same harm that occurs to an individual who is disclosed to have been the target of an investigation is an identical privacy right of a corporation. The corporation has the same negative effects as the individual. And so I think they would concede that privacy might need to be defined differently for corporations. They're simply saying this privacy interest is not. Well, the key point is that we don't deny that corporations have some interest and confidentiality that exists out there. For instance, AT&T has relied upon the common law of defamation, where a corporation's business interests, business reputation is implicated. But even— Sotomayor, they pled guilty already, so it's hard to imagine how much exponentially more damaging— Well, to be fair to AT&T, there was a settlement agreement in which they did not admit any wrongdoing. So— But that presupposes some sort of investigation. So that's public knowledge already. That is public knowledge. But I think the key point is that the corporation's interests in maintaining its business reputation has been not regarded as a personal privacy interest. It's true that they have interests, and FOIA protects those interests, for instance, interests in confidential commercial or financial information, under Exemption 4. And so what really the question — we come back to the key point, which is when Congress used the phrase personal privacy, it would have had no reason in 1974 or even now to think that term would have referred to corporations. The fact that corporations have other interests and other rights that might be legitimate is kind of beside the point, because those interests are not referred to in the law or otherwise as personal privacy interests. I'd like to reserve the balance of my time. Roberts. Thank you, Mr. Yang. Thank you. Mr. Kleinberg. Thank you, Mr. Chief Justice, and may it please the Court. The question in this case is whether any organization, including not only business corporations like AT&T, but also nonprofit organizations and political associations, should be categorically excluded from protection under Exemption 7c, such that this exemption will now offer less protection for privacy interests than the Constitution and the common law. This Court has consistently held that the privacy protections under FOIA are broader, and the text supports that position. Ginsburg. Do you include in the people, the persons that you say are shielded by this privacy exemption, as Mr. Yang said, foreign governments, State and local governments, those have all – those all fall under the APA definition of person? Justice Ginsburg, they do, and we would agree that as a matter of statutory construction, the concept of personal privacy does apply to those other categories of actors. Now, whether once that privacy interest is balanced against the public's interest in disclosure, that balance may well be different with respect to public or foreign entities, but certainly they have a right to personal privacy under the terms of the statute. Ginsburg. Can you give us an idea of the corporation has been shielded by Exemption 4 for its employees have been protected under Exemption 7, what is it, what would be – would fall within this privacy exception that would not be confidential business information or relate to employees of the corporation? Justice Ginsburg, we – I could give you two categories or kinds of examples. One is, for example, a series of e-mails among corporate officers, granted, whose own personal names and identifying information have been redacted, but in those e-mails, they may engage in a frank exchange about the competence and intelligence of a would-be regulator of the corporation, or a disparaging comments about the – Scalia Why does that relate to their privacy? I don't understand that. Scalia Why does that relate to the corporation's privacy interest? Anything that would embarrass the corporation is a privacy interest? Justice Alito Well, Justice Scalia, the answer is simply that these were communications, conversations that were occurring with an expectation of privacy by the individuals involved on behalf of their employer, and to the extent that they could be used to harm the reputation or the customer goodwill of the company, they do indeed have a personal privacy interest. Scalia Anything that hurts the image or the goodwill of the company? Justice Alito Your Honor, everything that is intended to be private is certainly subject to the balancing that we're asking for under Exemption 7c, indeed, that Congress provided, that if it's an interest in personal privacy, then it is to be balanced to determine whether the disclosure of that document is unwarranted. Scalia Mr. Klineberg, can you give me any example of – your brief talks a lot about the adjective personal, but we're not talking just about the adjective personal. We're talking about the phrase personal privacy. Personal, yes, can indeed apply to corporations sometimes, but there are certain phrases where it clearly does not. For example, you talk about personal characteristics. That doesn't mean the characteristics of General Motors. You talk about personal qualities. It doesn't mean the qualities of General Motors. You talk about a point of personal privilege. It's not a privilege of a corporation. And I think personal privacy is the same thing. Can you give me any examples in common usage where people would refer to the personal privacy of a corporation? It's a very strange phrase to me. Klineberg Well, Your Honor, as Justice Alito asked my colleague earlier, the whole concept of person as including a corporation would surprise many people, the proverbial person on the street. Scalia No, I'm not talking about that. I'll grant you that personal could sometimes refer to a corporation, although the government distinguishes it by etymology and so forth. Never mind that. I'm talking about personal privacy. Have any examples from the New York Times, from, you know, Boswell, from anywhere, that anybody refers to the interest of a corporation as the personal privacy of General Motors? I cannot imagine somebody using a phrase like that. Klineberg Your Honor, we're not aware of that phrase being used certainly in any statutory country. Ginsburg  Well, there's a sub-example within that category, which is the disparaging of an important customer, some unpleasant comments about an important customer of the corporation that could then be used quite, quite cleverly to say, you know, clearly by a competitor to harm the goodwill of the corporation with respect to that customer. But there is, indeed, another whole category of documents that goes beyond the context of AT&T's interest here. And the example is sort of internal documents within, say, an environmental nonprofit organization talking about their political strategies for defeating an amendment to the Clean Air Act. As an example, those political strategies that were shared internally by members of the organization without any intent to have them become public would become subject to automatic disclosure, sort of categorical disclosure, for the government to prevail in this case. Roberts Do you think it's — how does that work? If you have the president of the environmental organization says something about whatever it is, we can lobby this guy to get this changed, is he able to protect that on the grounds of his personal privacy, even though the embarrassment would go to the organization as a whole? Waxman Mr. Chief Justice, I believe the answer is in most cases yes, that the identity of the specific speaker and any identifying information corresponding to him or her would be protected. Roberts Why is it such a big deal, then, to extend that to the organization as a whole if the individual's privacy is already going to be protected? Waxman Indeed, Your Honor, I think that is our position, that the personal privacy of the corporation is affected by such disclosure. Roberts No, I mean, you're already protected, at least to a significant extent, because the individual officers would be able to assert a privacy interest, to the extent at least that what you find embarrassing to the corporation is also individually embarrassing to them. Waxman Right, but the redactions that would occur would in all likelihood simply be redactions of their names and perhaps their titles, but the substance of their comments would certainly be — would be disclosed under the government's view. Breyer Are there any examples that you have? That is, in the last 35 years, have there been any instance where the Justice Department or some other law enforcement agency compiled a file for law enforcement purposes that in that file there were, for whatever reasons, a bunch of conversations about the organization's strategy, and it did not interfere to release it with anybody's personal privacy, but it might interfere with that organization's strategy, and so the organization, whatever it was, the NRDC or something, was very upset about it. Did you find a single example or a thousand examples, or how many examples did you find of that happening? Waxman Well, Justice Breyer, one of the things that has puzzled us in this case is why it has taken 35 years. Breyer One reason might be that this has really never been a problem, because all the legitimate or most of them, anyway, that these organizations have an interest in privacy are actually taken care of by the other 17 exemptions here. Scalia Another reason might be that personal — nobody ever thought that personal privacy was covered in this case. Breyer I want to know, is there — one of the things you would have looked for is an example of a real problem of the kind you're talking about. I'm not saying you don't have one. I would just like to know if you found any and what they are so I could read them. Waxman Your Honor, we haven't found anything specific to the — in response to your question, but I will say that one of the explanations for why this issue has become more important today than maybe it has been in recent past, there really are three reasons. One is that Exemption 4, which Mr. Yang discussed, has been increasingly narrowed by the courts of appeals to the point where they specifically say, and indeed the government concedes, that the reputational concerns and the harm to customer goodwill is not the sort of harm that Exemption 4 guards against. And so that has become increasingly clear among the courts of appeals that the interests in confidentiality that we're talking about under Exemption 7c are not intentional. Breyer One possible reason you don't find them is because it's very rare that a law enforcement agency is going to try to subpoena the top strategy of the NRDC, the confidential strategy. There might not be too many such records. Another reason might be is they don't really care. Another reason might be, I don't know. But if you haven't found any examples, what we're back to, and maybe there are actual examples of that, of what you said to Justice Ginsburg of the other instance, where the, what was that first one? I'd like to know about the example. What was the first one again? They're worried about saying something mean about a regulator. Okay. Yeah, fine. Are there examples of that? Is this the first one? And what's the empirical status? Winsor, it's a — I cannot point you to specific examples. They're sort of hard to find in the sense that they are not typically litigated, and they certainly haven't been litigated under this exemption before. But I think the other explanation for why this matters today in a way that it might not have mattered so much before are two other reasons. One is that increasingly FOIA is being used by competitors and legal adversaries to obtain information not about what the government is doing, not about what the government is up to, but about what evidence the government might have gathered from private parties. Ginsburg's is that a reason to change what was the understanding of Exemption 7? I mean, one of the items that doesn't work in your favor was the Attorney General's memorandum at the time of the 74 amendments. Well, actually, Justice Ginsburg, at the time of the 74 amendments, the only existing Attorney General memorandum was that of Attorney General Clark, which read personal privacy.  Ginsburg I am talking about the Attorney General. Levies. Right. That was issued subsequent to the amendments in 1974, and that was an interpretive gloss on the recent amendments. Ginsburg Yes. That's what I'm saying. Right. And so at the time that Congress enacted the amendments, both under the Privacy Act as well as Exemption 7C, the only existing statement about what personal privacy might mean would be — would have been Attorney General Clark's understanding that personal privacy can in fact incorporate interests of corporations. Scalia But if Attorney General Levy's description, which was issued for the purpose of telling all the agencies of the Federal Government what this new statute meant and it had a lot of ambiguities in it, if that was wrong about this subject, you would have thought somebody would have objected. I mean, did some members of Congress who had passed FOIA say, this is outrageous? What about the personal privacy of General Motors? I'm not aware of any objections along those lines. Well, Your Honor, the Attorney General Levy's memorandum did not go into a long discussion or description of the analysis. It simply said it does not appear or does not seem to apply to corporations. And it's absolutely true. This is not — this issue hasn't really been litigated and presented. But our position is that there is nothing in the plain language that would indicate that Congress intended to categorically exclude corporations. It is certainly true that the legislative history at the time, as the government spends quite a bit of time exploring, does suggest that what was in most people's minds was protection of individual privacy. But there is no indication that they intended to exclude corporations. Scalia. Is it the burden of the government to show that they intended to exclude corporations, or is it your burden to show that this exception was meant to include corporations? I would think the latter is where the burden lies in this case. Well, Justice Scalia, our burden is to defend our view of the statute. Right, but you're asking the government to show that there was an intent to exclude corporations. I don't think that's their burden. I think it's your burden to show that this exemption was intended to include corporations. I agree, Your Honor, that we are — our burden is to demonstrate to you why the words personal privacy and the statute apply to corporations. I think one of the background facts is that there is no indication that anyone thought that it was not to be included. But let me say that the statute is not to exclude corporations. Roberts, your central argument is that because person is defined to include corporation, personal in the same statute must include corporate. I tried to sit down and come up with other examples where the adjective was very different from the root noun, and it turns out it's not hard at all. You have craft and crafty, totally different. Crafty doesn't have much to do with craft. Squirrel, squirrely, right? I mean, pastor, you have a pastor and pastoral. Same root, totally different. So I don't understand. I don't think there's much to the argument that because person means one thing, personal has to be the same relation. Mr. Chief Justice, let me try to explain precisely what our proposed rule of construction is, because I think there's been some confusion and I think the government has not properly characterized it, and certainly in their reply brief. We do not agree or we do not sign on to the term grammatical imperative, because our concern with that phrase is that it might suggest that the rule is to be applied regardless of the consequences, and that is not our position. Our position is that where the adjective means of or relating to a term that Congress has expressly defined, that definition should be applied so long as it makes sense to do so in light of the text and structure of the statute as a whole. So in this case, Your Honor, personal does – is defined when you open up the dictionary, the very first definition is of or relating to a particular person. Person is then defined by Congress as to include not only individuals, but corporations and other associations. So in this particular context, it makes perfect sense to look to the text. Ginsburg, you have read the brief of the Project on Government Oversight, where they give dozens and dozens of examples to show that overwhelmingly, personal is used to describe an individual, not an artificial being. And it is the overwhelming use of personal. Winsor, we do not dispute that personal is often, even many, many times used to describe an individual and can only be understood in that context. Indeed, the Truth in Lending Act argument that the government made in its reply brief is a perfect example. The word personal there is mentioned alongside personal, family, and household. And indeed, even in that very same statutory definition of consumer, the word is referred to as a natural person. So in that context, it would be absurd or inappropriate to borrow the concept of the definition of person. All we are saying is that when it is not absurd, when it does not do violence to the statute, under those circumstances, it makes perfect sense to borrow the definition that Congress provided. Sotomayor, what would be similar to medical files and such under Exemption 6? It uses the same phrase, unwanted invasion on personal privacy. So what would your reading do to Exemption 6? And how would we create or even make sense of Exemption 6? Your Honor, we don't believe our reading does any damage to this Court's jurisprudence in Exemption 6. And the simple reason is that while the words personal privacy in Exemption 6 do mean, and we agree with the Attorney General Clark in this, do mean that the same thing as it means in Exemption 7c, but because, precisely for the reason you said, Justice Sotomayor, the personnel and medical and similar files limits the likely scope of that privacy interest to individual natural persons. And that's simply not because of the words personal privacy, but because of the company that those words keep in that particular exemption. Sotomayor, I mean, if you are saying that the word personal privacy in Exemption 7c, if you are saying that personal privacy has some overlap with individual privacy, obviously it has to if you are going to give meaning to personal privacy, don't we have to give meaning to and similar files? And so what would those be? Well, Your Honor, as this Court said in the Washington Post case, the understanding of similar files is defined by the two benchmarks that are expressly provided, right, personnel and medical. So the kinds of files are limited to the sorts of files in which sort of individual information is likely to be contained. In that case, it was a passport file. Again, our argument is simply that it's that part of Exemption 6 that does the limiting work in terms of its scope. The words personal privacy mean the same thing in Exemption 6 as they do in Exemption 7c. The other point that I certainly want to make clear is that our position is that personal privacy is only the first step in the determination whether or not a particular document is disclosed, because if the government prevails, there will be no need even to articulate a public interest in the disclosure of potentially harmful documents. Instead, they will be automatically available to any competitor or legal adversary, and all we are asking for, and indeed all that Congress provided for, is that the privacy interests be weighed against the public interest in disclosure. And what the FCC did here was to categorically exclude corporations from the protections of Exemption 7c. And all we are saying is that those interests are legitimate and just need to be balanced. And what the government's obligations under these circumstances are is that they need to weigh the private interests in the documents against the articulated public interest in disclosure, and that interest, of course, has to do with what the government is up to. What do these documents tell us about what the government is doing? And if, as the amici on the government's side suggest, there are lots of public value and public interest in the disclosure, then that balance is more likely to be weighed in favor of disclosure. All we are asking for, though, is that that balance take place. And what's happened here is that it is, as I said, it's a categorical exclusion that simply is inconsistent with the terms that Congress laid out in Exemption 7c. Congress did not intend for FOIA to be a tool for an organization's adversaries to obtain access to harmful or embarrassing documents compiled for law enforcement purposes where such documents do nothing to open agency action to public scrutiny. If the government has its way in this case, the result will be what this Court decried in Favish, which was that it would be the failure to protect the privacy of citizens against the uncontrolled release of information compiled through the power of the State. If there are no further questions, I urge that the Third Circuit be affirmed. Thank you. Roberts. Thank you, counsel. Mr. Yang, you have 6 minutes left. Yang, thank you, Mr. Chief Justice. AT&T appears to have changed or at least modified its position somewhat from the position articulated at page 14 of its brief. There AT&T says, quote, "...by expressly defining the noun quote person unquote to include corporations, Congress necessarily defined the adjective form of that noun personal also to include corporations." Now, AT&T has given up on the grammatical imperative that guided exclusively the court of appeals decision in this case. There is nothing left. AT&T can provide no example where the term personal privacy has ever been used to refer to a corporation, much less a foreign government or State or local government in any context, whether it be FOIA, the law generally, or even in common usage. AT&T can provide no example of any problems that have arisen in over 35 years of the government's consistent administration of this provision. In fact, all indications point in simply one direction. Personal privacy applies only to individuals. The terms personal and the terms privacy do that alone, and together, personal privacy makes that clear. The legislative history, the decisions of this Court pointing to the balance applying only to individuals, individual rights, all point in the same direction. We would ask that the Third Circuit be reversed. Roberts. Thank you, counsel. Counsel. The case is submitted.